UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FRANK T.,

                             Plaintiff,

v.                                                                    1:20-CV-500
                                                                               (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.
_____

APPEARANCES:                                               OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      KENNETH HILLER, ESQ.
  Counsel for Plaintiff                                     AMY CHAMBERS, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                   SHIRA SISKIND, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 24.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.**       **RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1963. (T. 98.) He completed high school. (T. 355.) Generally, Plaintiff's alleged disability consists of stroke, headaches, "vascular issues," diabetes, neuropathy, high blood pressure, high cholesterol, and GERD. (T. 199.) His alleged disability onset date is November 1, 2015. (T. 98.)

### B. Procedural History

On February 23, 2017, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 98.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 12, 2019, Plaintiff appeared before the ALJ, Stephan Bell. (T. 61-97.) On February 28, 2019, ALJ Bell issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-26.) On February 25, 2020, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12-22.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 23, 2017. (T. 12.) Second, the ALJ found Plaintiff had the severe impairments of: diabetes, hypertension, obesity, and right arm cubital tunnel syndrome. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 14.) Fourth, the ALJ found Plaintiff had the residual

2

functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c) with additional non-exertional limitations. (T. 15.)[1]  The ALJ found Plaintiff could occasionally: climb ramps, stairs, ladders, ropes, or scaffolds; balance; stoop; kneel; crouch; crawl; work at unprotected heights; work around moving mechanical parts; operate a motor vehicle; and work in vibration. (*Id*.)  Fifth, the ALJ determined Plaintiff unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 20-21.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes two arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ improperly relied on a selective reading of opinions and evidence resulting in an RFC finding unsupported by substantial evidence and frustrating meaningful review. (Dkt. No. 14 at 13-23.)  Second, and lastly, Plaintiff argues the AC failed to account for new and material evidence because the evidence was directly related to already existing conditions and the evidence is probative. (*Id*. at 23-30.)  Plaintiff also filed a reply in which he reiterated his original arguments. (Dkt. No. 22.)

### B.   Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues substantial evidence supported the ALJ's decision. (Dkt. No. 21 at 7-16.)  Second, and lastly, Defendant argues the AC reasonably concluded that the additional evidence

---

[1]   Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.  20 C.F.R. § 416.967(c).

submitted after the administrative hearing did not show a reasonable probability that it would change the outcome of the decision, and to the extent the AC erred in not reviewing the additional evidence, any error was harmless.  (*Id*. at 16-21.)

### III.   RELEVANT LEGAL STANDARD

#### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.   ANALYSIS**

   **A.   Opinion Evidence and RFC Determination**

Plaintiff argues the ALJ erred in weighing the medical opinion evidence in the record and therefore his RFC determination was not supported by substantial evidence. (Dkt. No. 14 at 13-23.)  For the reasons outlined below, the ALJ properly weighed the medical opinion evidence provided by the consultative examiners and the RFC determination was supported by substantial evidence.

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1)[2].  An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ.  *Id*. § 416.927(d)(2). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources.  *Id*. §§ 416.927(d), 416.945(a)(3), 416.946(c). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity.  *Id*. § 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

---

[2]   On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. § 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. § 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process). Here, Plaintiff filed his claim before March 27, 2017.

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source.  20 C.F.R. § 416.927(c)(1)-(6).

In general, an ALJ's RFC determination is not fatally flawed if formulated absent a medical opinion.  The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."  *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Here, the record before the ALJ did not contain a medical source statement by a treating source nor did the record contain notations of functional limitations from a treating source; however, the record contained medical opinions from various consultative examiners.  Regarding Plaintiff's physical impairments, Hongbiao Liu, M.D. performed an internal medicine examination and provided a medical source statement.  (T. 360-364.)  Dr. Liu listed Plaintiff's diagnosis as: history of high blood pressure, diabetes, history of stroke, chronic leg pain, history of seizures, hyperlipidemia, and gastroesophageal reflux disease.  (T. 363.)  Based on his examination of Plaintiff, Dr. Liu opined he had "mild to moderate limitations for prolonged walking, bending, and

7

kneeling." (T. 363.) He further opined Plaintiff should "avoid heights and operating heavy machinery because of his history of seizures." (*Id*.)

The ALJ afforded Dr. Liu's opinion "little weight." (T. 19.) The ALJ concluded, the doctor's opined limitations were based on Plaintiff's subjective complaints of leg pain and the doctor's finding of diminished sensation in the right lower extremity; however, Plaintiff's complaints were never reported to a treating source. (*Id*.) The ALJ further concluded Dr. Liu's environmental limitations were based on a reported history of seizures which were not documented in the record. (*Id*.)

On June 2, 2017, non-examining consultative examiner, J. Koenig, M.D., reviewed the record, including Dr. Liu's examination and opinion. (T. 105-106.) Based on a review of the record at the time, Dr. Koenig opined Plaintiff was capable of performing the exertional and non-exertional demands of medium work. (T. 105.) The doctor further opined Plaintiff should avoid hazards such as machinery and heights. (T. 106.) Dr. Koenig explained exertional limitations were due to hypertension, controlled on medications. (T. 105.) Dr. Koenig further explained limitations were based on Plaintiff's written testimony that stress raises his blood pressure and Plaintiff's history of intracranial hemorrhage. (*Id*.) When asked to provide additional explanation to support the RFC for medium work, Dr. Koenig outlined Dr. Liu's objective findings on examination and an examination performed on January 25, 2017 which identified no functional limitations. (T. 106.) The ALJ afforded "significant weight" to Dr. Koenig's opinion Plaintiff could perform medium work; however, the ALJ concluded the environmental limitations were not supported by the record. (T. 20.)

Plaintiff appears to argue the ALJ erred in affording more weight to the opinion of a non-examining source over an examining source. (Dkt. No. 14 at 15-16.) Plaintiff's argument fails. An ALJ may afford more weight to a non-examining consultative examiner than an examining one. *Wetzel v. Berryhill*, 783 F. App'x 44, 46 (2d Cir. 2019) (ALJ did not err in concluding that the non-examining consultant's medical opinion was entitled to greater weight than the examining consultant's medical opinion). Further, the opinion of a consultative examiner may constitute substantial evidence that the ALJ can rely on to determine Plaintiff's RFC. *See Ramsey v. Comm'r of Soc. Sec., Comm'r*, 830 F. App'x 37, 39 (2d Cir. 2020) (the ALJ did not commit an error by deviating from consultative examiners' recommendations to decrease plaintiff's RFC based on other evidence in the record); *see Trepanier v. Comm'r of Soc Sec. Admin.*, 752 F. App'x 75, 78 (2d Cir. 2018) (ALJ's RFC finding was supported by substantial evidence where the ALJ "largely relied on the report of a consultative examiner"). Therefore, Plaintiff's argument fails.

Plaintiff further argues that the opinions of the consultative examiners cannot constitute substantial evidence because they did not review a complete record and did not review a treating opinion. (Dkt. No. 14 at 15-16.) Plaintiff's argument fails. A consultative examiner is not required to obtain or review laboratory reports or treatment records. *Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) ("the facts that Dr. Wassef's specialty is pediatrics and that his review did not include the Plaintiff's MRI results do not preclude the ALJ from assigning Dr. Wassef's opinion significant weight"); *see Amos v. Comm'r of Soc. Sec.*, No. 1:18-CV-1367, 2020 WL 1493888, at *4 (W.D.N.Y. Mar. 27, 2020) (ALJ did not err in affording weight to consultative examiner

who did not review objective imaging); *see Giovino v. Comm'r of Soc. Sec.*, No. 19-CV-122, 2020 WL 1909982, at *3 (W.D.N.Y. Apr. 20, 2020) (same); *see Genito v. Comm'r of Soc. Sec.,* No. 7:16-CV-0143, 2017 WL 1318002, at *9 (N.D.N.Y. Apr. 7, 2017) ("there is no legal requirement that opinion sources must have access to a full and complete record in order for their opinions to be sufficient to constitute substantial evidence"); *see* 20 C.F.R. § 404.1519n(c)(1)-(7) (elements of a complete consultative examination). Therefore, the fact that Drs. Liu and Koenig did not review medical imaging, or a treating opinion, does not preclude the ALJ from affording their opinions weight nor does it preclude the ALJ from relying on their opinions in formulating the RFC.

Plaintiff argues the ALJ erred in concluding Dr. Liu's opinion was entitled to less weight because it was based on Plaintiff's subjective complaints. (Dkt. No. 14 at 15.) To be sure, a doctor's reliance on subjective complaints does not undermine his opinion of plaintiff's functional limitations. *Green-Younger v. Barnhart*, 335 F.3d 99 (2nd Cir. 2003). However, an ALJ may provide less weight to a doctor's opinion because it was based largely upon the subjective statements of a plaintiff, whom the ALJ had reasonably found to be less than fully credible. *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012); *see Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (holding that the ALJ properly elected not to adopt many of the consultative examiner's conclusions, which were unsupported and inconsistent with other record evidence). The plaintiff in *Green-Younger* suffered from fibromyalgia which alludes objective medical testing. *Green-Younger*, 335 F.3d at 108 (2d Cir. 2003) (the ALJ erred because he "effectively required "objective" evidence for a disease that eludes such measurement"). Here,

Plaintiff suffered from physical impairments which could be gauged based on objective testing.  In addition, as noted by the ALJ, the limitations Plaintiff reported to the consultative examiner were not reflected elsewhere in the record.  (T. 19.)

As the ALJ properly concluded, Dr. Liu's opined limitations were based on Plaintiff's subjective complaints and not supported by other evidence in the record.  The ALJ concluded treatment notations in the record did not contain reports of leg pain or diminished sensation in the right lower extremity.  (T. 19.)  The ALJ has the duty to evaluate conflicts in the evidence.  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  The ALJ properly fulfilled his duty to resolve such conflicts here and provided evidence in the record to support his determination.

Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise."  *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).   Therefore, the ALJ properly concluded Dr. Liu's opinion was entitled to less weight because his opined limitations were based on subjective complaints which were not reflected elsewhere in the record.

Plaintiff next argues the evidence in the record contradicts an RFC for medium work.  (Dkt. No. 14 at 14-19.)  Plaintiff argues "[o]bjective evidence, such as imaging tests and labs, and vital signs support more restrictive limits in walking, standing,

bending, and off-task.  Moreover, Plaintiff suffered from dizziness, headaches, diabetic complications, spasms, and other effects that would restrict his ability for activity like prolonged walking or standing, etc." (Dkt. No. 14 at 15.)  Plaintiff proceeds to cite objective evidence in the record and testimony which he asserts supports his argument. (*Id*. at 17-19.)  As noted by Defendant, many records cited by Plaintiff in support of his argument were outside the relevant time period.  (Dkt. No. 21 at 13.)

In general, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position.  Substantial evidence "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).  Here, Plaintiff fails to show no reasonable factfinder could have reached the ALJ's conclusion.

In formulating Plaintiff's RFC for medium with additional non-exertional limitations, the ALJ relied on the record as a whole.  *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018).  As outlined above, the ALJ relied primarily on the medical opinion provided by Dr. Koenig and to a lesser extent on the opinion provided by Dr. Liu.  The ALJ also relied on objective medical evidence in the record and Plaintiff's subjective reports to providers that he was doing well and did not experience medication side effects.  (T. 16-19.)

Indeed, treatment notes from July 28, 2017 stated Plaintiff dealt with intermittent aches and pains, but there were no concerning or new musculoskeletal complaints, and Plaintiff was not in any acute distress.  (T. 378.)  Plaintiff also reported that he was doing generally well.  (T. 18, 377.)  Further, on January 31, 2018, Plaintiff reported to be doing generally well, and although Plaintiff complained of some numbness, pain and tingling that affected his right upper extremity over the past several months, he attributed that to his sleep position, and symptoms improved with motion.  (T. 18, 385.)  Plaintiff had no lower extremity swelling, and aside from the right upper extremity issues, he denied any new musculoskeletal complaints, and the only positive findings were consistent with right cubital tunnel syndrome.  (T. 18, 388.)  On physical examination, his right upper extremity range of motion was normal, though there was some mild tenderness to palpation in the region of the cubital tunnel.  (T. 389.)  On August 3, 2018, a treating provider noted Plaintiff was doing generally well, and had largely normal findings, including negative straight leg raise tests, though he reported some back spasms and joint pain in his upper extremities because of lifting that he had done during a recent move.  (T. 18, 401, 403-405.)

Although Plaintiff was diagnosed with right cubital tunnel syndrome, and he complained after doing a lot of lifting, he was not referred for diagnostic testing, nor was he referred to, or seen by, a specialist for additional evaluation or treatment.  (T. 19, 389, 401, 404.)  On November 8, 2018, Plaintiff continued to complain of back pain and spasms, but he denied shortness of breath, lightheadedness, or dizziness, and findings on examination were benign, including no focal neurological deficits, and no lower extremity swelling.  (T. 19, 406-407.)  Overall, the ALJ's RFC was supported by substantial evidence in the record.

Although Plaintiff asserts the ALJ failed to take into consideration limitations due to headaches, such as reduced pace and off-task time, the record does not support Plaintiff's argument.  (Dkt. No. 14 at 19.)  To the extent the records to which Plaintiff cites in support of this argument fall within the relevant time period, those records simply show Plaintiff was diagnosed with a headache on a number of occasions; however, the records do not suggest Plaintiff's headaches were severe and persistent, and indeed, there is no evidence suggesting Plaintiff sought or received any special treatment for his headaches (T. 378, 385, 402, 406), or that he would need limitations in the RFC for a reduced pace and time off task to account for his headaches, as he suggests in his brief.  (Dkt. No. 21 at 13.)

Plaintiff further argues the ALJ failed to fully develop the record by not requesting a neurological assessment because Plaintiff had brain injuries, cranial hemorrhages and had suffered a stroke, and the consultative examiner did not conduct neurological or cognitive testing.  (Dkt. No. 14 at 22.)  Here, the ALJ was not obligated to order additional testing.  Plaintiff did not allege cognitive difficulties and the consultative

examiners who examined Plaintiff, concluded he could perform simple and complex work.  *Hyshaw v. Comm'r of Soc. Sec.*, 797 F. App'x 671, 672 (2d Cir. 2020).

Consultative examiner, Susan Santarpia, Ph.D., examined Plaintiff and opined he was able to understand, remember, and apply simple, as well as complex, directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, coworkers and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; regulate emotions, control behavior and maintain well-being; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions within normal limits.  (T. 357.)  Therefore, because Plaintiff did not allege cognitive difficulties and Dr. Santarpia opined Plaintiff was capable for perform up to complex tasks, the ALJ was not required to further develop the record.

Overall, the ALJ committed no error by determining the scope of Plaintiff's RFC because that is his responsibility.  *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020).  The ALJ considered the medical opinions in the record and explained the weight he provided each one.  The ALJ accurately summarized the treatment notations in the record and objective medical observations.  Although Plaintiff cites to evidence he asserts supports his argument, he fails to prove that no reasonable factfinder could have reached the ALJ's decision.  Therefore, the ALJ's RFC determination was proper and supported by substantial evidence in the record.

**B.    Additional Evidence to AC**

Plaintiff argues the AC failed to consider additional evidence submitted by Plaintiff.  (Dkt. No. 14 at 23-30.)  Plaintiff appears to argue the evidence submitted to

the AC would affect the outcome of Plaintiff's case because the ALJ did not have a treating source statement, the consultative examiners did not have a complete record, and the RFC did not account for Plaintiff's limitations reflected in the treating source opinion submitted to the AC.  (*Id*. at 25.)  Here, the evidence submitted to the AC does not create a reasonable possibility that it would have influenced the ALJ to decide Plaintiff's application differently.  Further, in reviewing the record, including the additional evidence, substantial evidence supports the ALJ's determination.

If the AC denies review of a case, "the ALJ's decision, and not the Appeals Council's is the final agency decision."  *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015).  However, the court in *Lesterhuis* also held that when reviewing the Commissioner's decision, "[w]e 'review the entire administrative record *which includes the new evidence*, and determine, as in every case, whether there is substantial evidence to support the decision of the [Commissioner].'"  *Id.* (citing *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)) (emphasis added); *see also Westhoven v. Comm'r of Soc. Sec.*, No. 17-CV-1048, 2019 WL 1541053, at *6 (W.D.N.Y. Apr. 9, 2019) (recognizing that after *Lesterhuis*, the court must focus on the ALJ's decision and not the AC's denial of review).

A district court's review is based on the entire administrative record, including any new evidence submitted to the AC following the ALJ's decision.  *See Perez,* 77 F.3d at 45.  Thus, as in this case, when the AC denies review after considering new evidence, the court "simply review[s] the entire administrative record, which includes the

new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Id.,* at 46.

The Second Circuit has cautioned that medical evidence generated after an ALJ's decision cannot be "deemed irrelevant solely because of timing, [as] subsequent evidence of the severity of a condition suggests that the condition may have been more severe in the past than previously thought." *Suttles v. Colvin*, 654 F. App'x 44, 47 (2d Cir. 2016) (internal citations omitted).  However, the Court has consistently held that medical evidence generated after the ALJ's decision must be both (1) relevant to the plaintiff's condition during the relevant period and (2) probative, and additionally must create "a reasonable possibility that the new evidence would have influenced the Commissioner to decide [plaintiff's] application differently." *Evans v. Colvin*, 649 F. App'x 35, 38 (2d Cir. 2016) (citing *Pollard v. Halter,* 377 F.3d 183, 193 (2d Cir. 2004)); *see Guerra v. Colvin*, 618 F. App'x 23, 25 (2d Cir. 2015) (new medical records submitted to the AC document symptoms after the ALJ's decision date, do not undermine the ALJ's evaluation of plaintiff's condition during the relevant time period, and plaintiff failed to explain why certain evidence made 19 months after the ALJ's decision related to her disability status as of the date of the ALJ's decision).  Otherwise, "disability administrative proceedings would be an unending merry-go-round with no finality to administrative and judicial determinations." *Tirado v. Bowen*, 842 F.2d 595, 596 (2d Cir. 1988).

Plaintiff submitted additional evidence to the AC.  The evidence consisted of a medication list (T. 33-36), a Medical Examination for ABAWD Determination" form completed by Joseph Coriglliano, D.O. dated September 4, 2019 (T. 38-39), emergency

17

room treatment evidence dated December 24, 2019 (T. 41-42), and evidence from Buffalo Medical Group dated January 2019 through March 2019 (T. 44-60).

Six months after the ALJ rendered his decision, Dr. Corigliano completed an Able-Bodies Adults without Dependents ("ABAWD") form.  (T. 38-39.)  Dr. Corigliano indicated Plaintiff was "moderately limited" in his ability to: walk, stand, lift, carry, push, pull, bend, use hands, and climb.  (T. 39.)[3]  He indicated Plaintiff had no limitations in his ability to: sit, see, hear, or speak.  (*Id.*)

Plaintiff argues, Dr. Corigliano's opinion contradicts the RFC findings; and Dr. Corigliano was Plaintiff's treating physician for years and was familiar with Plaintiff's combined conditions and effects, and therefore his opinion may have been entitled to a greater weight than would be evidence from a non-treating source.  (Dkt. No. 14 at 26.)  Plaintiff's argument fails.

First, Plaintiff provides no citation to support his assertion Dr. Corigliano's "moderate" limitations were more limiting than the ALJ's RFC determination.  Indeed, Dr. Corigliano and Dr. Liu both used the term "moderate" to describe Plaintiff's exertional limitations.  Based in part on Dr. Liu's opinion of "moderate" limitations, Dr. Koenig opined Plaintiff was capable of performing the exertional and non-exertional demands of medium work.  (T. 105.)  Therefore, there is no "reasonable possibility that the new evidence would have influenced the Commissioner to decide [plaintiff's] application differently."  *Evans*, 649 F. App'x at 38.  Therefore, Plaintiff fails to meet his burden of establishing a more restrictive RFC.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).

---

[3]  The form contained three levels of functional limitations: no evidence of limitations, moderately limited, and very limited.  (T. 39.)  The form did not contain further definition.

Further, although Dr. Corigliano based his September 2019 limitations on conditions he treated Plaintiff for prior to the ALJ's determination, nothing in the form indicates that the limitations provided applied to the time period prior to the completion of the form. Therefore, Plaintiff fails to prove that the opinions were relevant to his condition during the relevant period.  *Evans*, 649 F. App'x at 38.

Second, even assuming the AC should have considered Dr. Corigliano's opinion, any error in refusing to consider the new evidence was harmless because, considering the administrative record that was before the ALJ, the AC would have reached the same conclusion even after considering the new evidence for the reasons outlined above. *Ramsey*, 830 F. App'x at 40.

Overall, for the reasons outlined herein, the ALJ's RFC was proper and supported by substantial evidence in the record.  The evidence submitted to the AC would not have altered the ALJ's determination.  Therefore, the ALJ's determination is upheld.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:	August 16, 2021

*Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge